1426 WOODWARD AVENUE CORP. v. WOLFF.

1. APPEAL AND ERROR—FAILURE TO CROSS-APPEAL.

A party to a suit in equity who fails to cross-appeal from portion of decree adverse to it is deemed to have accepted that provision in the decree.

2. JUDGMENT—PARTIES—VALIDITY OF ORDINANCES.

In suit by building owners who had installed marquees in the front of their buildings under special revocable permits to test validity of action of common council revoking such permits, the question of whether or not an ordinance construed as prospectively operative upon adjoining and nearby streets other than one on which plaintiffs' buildings were located and which permitted maintenance of existing structures on such other streets should be construed as retroactive is not

before the Supreme Court for decision where the owners of such other marquees are not parties to the suit (Detroit Ordinance No. 298-C, as amended by No. 4-D, No. 62-D, and No. 217-D).

3. MUNICIPAL CORPORATIONS—CONTROL OF STREETS—SURFACE, SPACE ABOVE AND BENEATH.

The control of streets in a city is not limited to the surface, but includes the space above and beneath the surface (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238, as amended by Act No. 295, Pub. Acts 1931; Detroit Charter, title 3, chap. 1, § 12, subd. [g]).

4. SAME—ORDINANCES—MARQUEES—AESTHETIC    CONSIDERATIONS—RECORD.

While aesthetic considerations were one basis for ordinances prohibiting maintenance of existing marquees in front of buildings on portion of principal thoroughfare of large city, record *held*, not to justify conclusion that it was the sole purpose for taking such action (Detroit Ordinances No. 298-C, as amended by No. 4-D, No. 62-D, and No. 217-D).

5. SAME—ORDINANCES—REASON FOR ENACTMENT.

The reason for the enactment of an ordinance need not be stated therein.

6. SAME—ORDINANCES—MARQUEES—CONFUSION OF TRAFFIC.

From record in suit to test validity of ordinance regulating the maintenance of signs and marquees on downtown portion of principal thoroughfare of a large city it is a proper inference that a profusion of lights on such street may tend to a confusion of both pedestrians and motorists in the nighttime (Detroit Ordinances No. 298-C, as amended by No. 4-D, No. 62-D, and No. 217-D).

7. HIGHWAYS AND STREETS—SIGNS AND MARQUEES PROJECTING OVER SIDEWALKS—PUBLIC NUISANCE—PUBLIC SAFETY.

Signs projecting over public sidewalks may under some circumstances be considered a public nuisance and a menace to public safety.

8. MUNICIPAL CORPORATIONS—HOME-RULE ACT—LIBERAL CONSTRUCTION.

The home-rule act should be construed liberally and in a home-rule spirit (1 Comp. Laws 1929, § 2228 *et seq.*).

9. SAME—CONSTRUCTION OF HOME-RULE ACT.

Under the home-rule act cities have a general grant of rights and powers, subject only to certain enumerated restrictions

instead of having only enumerated rights and powers definitely ·specified (1 Comp. Laws 1929, § 2228 *et seq.*).

10. SAME—CHARTER OF HOME-RULE CITY—PERMISSIVE POWERS.
A city with a home-rule charter may enact and put into its charter any provisions limited to purely municipal government that it may deem proper so long as they do not run contrary to the Constitution or to any general statute (1 Comp. Laws 1929, § 2228 *et seq.*).

11. SAME—ORDINANCES—REGULATION OF STREETS—POLICE POWER.
Justification for an ordinance regulating a home-rule city's streets is predicated upon the so-called police power of government which includes the power to protect the safety, health, morals, prosperity, comfort, convenience· and welfare of the public or any substantial part of the public (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238; Detroit Charter, title 3, chap. 1, § 12, subd. [g]; Detroit Ordinance No. 298-C, as amended by Act No. 4-D, 62-D, and 217-D).

12. SAME—ORDINANCES—PRESUMPTION OF CONSTITUTIONALITY.
The same presumption of constitutionality applies to ordinances of a city government as applies to statutes passed by the legislature.

13. STATUTES—PRESUMPTION OF CONSTITUTIONALITY.
A statute will be presumed to be constitutional by the courts unless the contrary clearly appears and in case of doubt every possible presumption not clearly inconsistent with the language and subject matter is to be made in favor of the constitutionality of legislation, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt it violates some provision of the Constitution that a court will refuse to sustain its validity.

14. MUNICIPAL CORPORATIONS—ORDINANCES—POLICE POWER—CONSTITUTIONAL LAW.
Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power and changes in such regulations must be sought through the ballot or the legislative branch which promulgated them.

15. SAME—ORDINANCE—TEST OF VALIDITY.

In determining the validity of a municipal ordinance the court must ascertain whether or not the municipality has the power to enact the regulation and, if so, whether or not the power has been so arbitrarily and capriciously exercised as to make the regulation unreasonable and to deprive the complaining party of constitutional rights.

16. SAME—SPECIAL PERMIT TO MAINTAIN MARQUEE—REVOCATION.

The special but revocable permit to maintain a marquee over a city sidewalk in violation of other provisions of home-rule city ordinance regulating such structures was revoked by repeal of provision of ordinance permitting the granting of such special permits (Detroit Ordinance No. 298-C, as amended by No. 217-D).

17. SAME—ENCROACHMENTS UPON PUBLIC STREETS OR PLACES— HOME-RULE CITIES.

The power of a city to prohibit and remove all encroachments upon and obstructions in streets and public places by buildings, fences, or in any manner which had been conferred by charter upon city before adoption of the Constitution containing provisions for home-rule government of cities was carried over into the charter under the new Constitution (Detroit Charter [1904], § 175).

18. SAME—OVERHANGING SIGNS AND MARQUEES—REGULATION OF ENCROACHMENTS ON PUBLIC STREETS.

Overhanging signs and marquees extending over all or a portion of a public sidewalk constitute encroachments on the public street subject to regulation by municipal authority (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238, as amended by Act No. 295, Pub. Acts 1931; Detroit Charter, title 3, chap. 1, § 12, subd. [g]).

19. SAME—ENCROACHMENTS OVER A STREET—AESTHETIC CONSIDERATIONS—USE OF STREET.

Aside from aesthetic reasons for requiring removal of signs and marquees encroaching on and over a street, municipal authorities have full power to control such encroachments which obstruct light, air, view, rainfall or complete use of the street.

20. SAME—ORDINANCE—OVERHANGING SIGNS AND MARQUEES—CONTROL OF STREETS—CLASSIFICATION.

Fact that ordinance prohibiting overhanging signs or marquees on a portion of the principal business thoroughfare of a large city does not also prohibit similar encroachments in

other business or congested areas does not necessarily make the ordinance unconstitutional as a violation of the constitutional limitation that the control of its streets by a municipality must be a reasonable control (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238; Detroit Charter, title 3, chap. 1, § 12, subd. [g]; Detroit Ordinance No. 298-C, as amended by No. 4-D, No. 62-D, and No. 217-D).

21. CONSTITUTIONAL LAW—COURTS—MUNICIPAL CORPORATIONS—REGULATION OF STREETS—SIGNS—MARQUEES—ORDINANCES.

It is not within the province of a court to dictate to a home-rule city what streets the city legislative authority shall include or exclude in prohibiting signs or in-regulating marquees which project into the streets or to determine that an ordinance for such purpose shall be ·city-wide (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238; Detroit Charter, title 3, chap. 1, § 12, subd. [g]).

22. SAME—ORDINANCES—EQUAL PROTECTION.

A city ordinance is not necessarily void because discriminating in effect in that it does not apply equally to all persons, all places and all situations alike.

23. COSTS—PUBLIC QUESTION—VALIDITY OF HOME-RULE CITY ORDINANCE REGULATING SIGNS AND MARQUEES.

No costs are awarded upon affirmance of a decree declaring valid a home-rule city ordinance regulating signs and marquees overhanging a portion of a street, a question of a public nature being involved (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2238; Detroit Charter, title 3, chap. 1, § 12, subd. [g]; Detroit Ordinance No. 298-C, as amended by No. 4-D, No. 62-D, and No. 217-D).

Appeal from Wayne; Webster (Arthur), J. Submitted June 12, 1945. (Docket No. 19, Calendar No. 42,973.) Decided October 8, 1945. Rehearing denied December 3, 1945.

Bill by 1426 Woodward Avenue Corporation against Joseph P. Wolff, as commissioner of the Department of Buildings & Safety Engineering of the city of Detroit, and others for decree declaring an ordinance of the city of Detroit unconstitutional. James Vernor Company, Graystone Ballroom, Inc., R. H. Fyfe & Company and Grinnell Brothers inter-

vene as parties plaintiff.  Decree for defendants.
Plaintiff and intervening plaintiffs appeal.  Affirmed.

*MacMahon, Abbott & Roberts, Clark, Klein,
Brucker & Waples,* and *Hubar & Maddin,* for plaintiffs.

*William E. Dowling,* Corporation Counsel, and
*Vance G. Ingalls,* Assistant Corporation Counsel,
for defendants.

BOYLES, J.  In this case the appellants challenge
the validity of an ordinance of the city of Detroit
prohibiting the maintenance of existing projecting
sidewalk signs and regulating the size of marquees
over sidewalks on Woodward avenue between Grand
boulevard and the Detroit river.  The several plaintiffs filed separate bills of complaint in the Wayne
county circuit court for a declaration of their respective rights to maintain existing marquees and
signs, asked that the ordinance in question be declared unconstitutional and that the city authorities be permanently enjoined from enforcing the
same.

The circuit judge after hearing testimony and
arguments held that the ordinance in question, effective October 23, 1941, was valid and entered decree accordingly.  The court also decreed that the
ordinance previous to October 23, 1941, was invalid
and enjoined the city from further prosecution of
any proceedings thereon begun prior to that date.
The city does not cross-appeal and therefore accepts that provision in the decree.  All plaintiffs
appeal.

A proper understanding of the situation as it
applies to each of the plaintiffs requires a detailed

statement of facts as applied to each of them, and of the ordinances on which they largely base their respective claims. Counsel in their respective briefs agree on the essential facts.

Appellants 1426 Woodward Avenue Corporation and Graystone Ballroom, Inc., are the owners of marquees located in front of their buildings at 1426 Woodward avenue and 4237 Woodward avenue, respectively. Appellants James Vernor Company, R. H. Fyfe & Company and Grinnell Brothers are the owners of projecting signs located in front of their buildings at 239, 2001 and 1515 Woodward avenue, respectively. All of the aforesaid marquees and signs were installed under special permits granted by the common council, which permits were expressly made revocable and, as we shall see, were revoked by action of the common council, and by ordinances No. 298-C, as amended, No. 4-D and No. 62-D of said city. Ordinance No. 4-D amended section 5 of ordinance No. 298-C, and ordinance No. 62-D amended sections 1, 2 and 5 of ordinance No. 298-C.

Ordinance No. 298-C relates to projecting signs and marquees in that section of Woodward avenue between Adams avenue and Grand boulevard, and ordinance No. 62-D relates to that section of Woodward avenue between Adams avenue and the Detroit river. These ordinances prohibit all projecting signs and all marquees projecting more than one-half the width of the sidewalk, or more than 10 feet. In 1941 this width was amended to read "more than 10 feet, 6 inches."

However, as to marquees, section 4 of ordinance No. 298-C (which section was unamended by ordinance No. 4-D and No. 62-D) provided that "marquises larger than permitted herein shall not be constructed without special permission from the

common council." Acting under this proviso, the common council proceeded to grant special permits to several owners of marquees on Woodward avenue to maintain the same even though they exceeded the width prescribed by the ordinance. These special permits were all granted subsequent to January 11, 1935, which was the effective date of ordinance No. 298-C.

The following marquee owners received such special permits, pursuant to section 4 of ordinance No. 298-C:

1— Fox Theatre, 2211 Woodward avenue
2— Detroiter Hotel, 2560 Woodward avenue
3— Colonial Theatre, 2611 Woodward avenue
4— Fine Arts Theatre, 2454 Woodward avenue
5— Mayfair Theatre, 3450 Woodward avenue
6— Arcadia Ballroom, 3527 Woodward avenue
7— Garden Theatre, 3927 Woodward avenue
8— Forest Theatre, 4635 Woodward avenue
9— Hotel Roberts, 5725 Woodward avenue
10— Center Theatre, 6540 Woodward avenue

In all these cases, special permission was granted by the common council subsequent to January 11, 1935, being the effective date of ordinance No. 298-C, to maintain marquees wider than the ordinance prescribed, covering that part of Woodward avenue from Grand boulevard to the Detroit river.

That part of the ordinances referring to the section between Adams avenue and the Detroit river (ordinance No. 62-D) became effective June 1, 1938, and provided that no projecting sign or marquee should be maintained in contravention therewith after June 1, 1941.

On February 17, 1941, the directors of 1426 Woodward Avenue Corporation, one of the appellants herein, filed a petition with the city clerk for a special permit to continue to maintain its marquee at

1426 Woodward avenue. This petition was referred to the commissioner of the department of buildings and safety engineering and to the fire marshal for recommendation. The commissioner of the department of buildings and safety engineering, on May 6, 1941, addressed a communication to the city clerk stating that:

"Petitioner is acting in accordance with the provisions of the ordinance by requesting special permission from your honorable body to have the marquise remain in its present form and size. Since this matter involves a question of policy which was intended to be under the control of the common council and has virtually no connection with safety, this department offers no objection to the petitioner's request."

The acting fire marshal, however, recommended that the petition of 1426 Woodward Avenue Corporation be denied, on the ground that the marquee, constructed in 1910 (31 years previously) constituted a fire hazard.

The common council, by a vote of 5 to 1, granted the petition of said 1426 Woodward Avenue Corporation to maintain its marquee as presently existing. All of the acting members of the common council voted on the petition. Three councilmen, to wit, Dingeman, Ewald and Hamilton, had been removed from office, and their successors had not been elected, so that the common council, ordinarily consisting of nine members, had only six members at the time the vote was had on the petition in question. Said action granting the petition to continue to maintain this marquee was vetoed by the mayor on May 27, 1941. The common council thereupon considered a resolution to override the veto, five members of the common council voted to override it and one to sustain it, but the mayor's veto was held

to be sustained. Appellant 1426 Woodward Avenue Corporation claims this veto was beyond the powers of the mayor and void—that the council action stands.

On June 23, 1941, this plaintiff 1426 Woodward Avenue Corporation filed this suit and secured a temporary restraining order enjoining the enforcement of the ordinances in question. On July 14, 1941, Hon. Harry B. Keidan, circuit judge, issued an order granting a temporary injunction against the enforcement of said ordinances.

Thereafter, on July 28, 1941, the corporation counsel addressed a communication to the common council, stating that:

"Judge Keidan's principal reason for granting the temporary restraining order was because other marquises on other buildings on Woodward avenue, being maintained in violation of the ordinance, have been allowed to remain by special permission of the common council."

The corporation counsel thereupon advised that ordinance No. 298-C be amended, by deleting therefrom that part of section 4 which provided for special permits of the common council to maintain marquees wider than one-half the width of the sidewalk, or more than 10 feet. Accordingly, ordinance No. 217-D was enacted by the common council, effective October 23, 1941. This is the ordinance here in dispute. Since section 4 of ordinance No. 298-C was thus amended, thereby closing the door to the granting of any further special permits to any other owners of marquees on Woodward avenue, no action has been taken by the common council with reference to the ten Woodward avenue marquees protected by special permits granted by the common council before the special permit clause was stricken from the ordinance.

After the adoption of ordinance No. 217-D, the common council adopted another ordinance known as ordinance No. 229–D, which became effective December 25, 1941, and which prohibited on all streets in the city of Detroit, except Woodward avenue, and excepting boulevards, the construction of marquees extending more than one-half the width of the sidewalk, or more than 10 feet beyond the lot line. The commissioner of buildings and safety engineering testified that it would apply to Bagley avenue, Adams avenue, Park avenue, Broadway, Library avenue and Farmer street, on all of which there are existing many marquees wider than the above-mentioned limitation; but, according to the commissioner, the ordinance had no retroactive effect, relates only to future installations and does not interfere with the continued maintenance of any of such marquees. However, neither the opinion of the commissioner nor the pronounced opinion of counsel who tried the case can make final decision on the construction to be given the ordinance, or preclude judicial determination as to its effect. Whether or not the ordinance in question has a retroactive effect is not before us for decision. According to the record, the following marquees exist on downtown streets adjacent to Woodward avenue, all of which are wider than one-half the width of the sidewalk:

> 1—Greyhound Bus Terminal marquee. Width 18½ feet. Corner Grand River avenue and Washington boulevard.
> 2—Book-Cadillac Hotel. Marquee width 22 feet. Corner of Washington boulevard and Michigan avenue.
> 3—Statler Hotel. Marquee width 22 feet. Corner Washington boulevard and Park avenue.

4—Statler Hotel. (Bagley avenue side) Marquee extends entire width of sidewalk.

5—Michigan Theatre. Marquee approximately 18 feet wide. 238 Bagley avenue.

6—United Artists Building. Marquee approximately 15½ feet wide. 140 Bagley avenue.

7—Tuller Hotel. Marquee approximately 15 feet wide. Corner Park avenue and Adams avenue.

8—Kales Building. Marquee approximately 15 feet wide. Corner Park avenue and Adams avenue.

9—Stroh Building and Adams Theatre. 28 and 44 W. Adams avenue. Stroh marquee extends to within 1½ feet of the edge of 15-foot walk; Adams marquee to within 3 feet of edge of walk.

10—Wurlitzer Building, 1509 Broadway. Marquee extends more than one-half the width of sidewalk.

11—Capitol Theatre Building, 1526 Broadway. Marquee projects entire width of sidewalk.

12—Crowley-Milner Company, Library avenue at corners of Monroe and Gratiot avenues. Marquees project to within 3 feet of edge of 15-foot sidewalk.

13—Ford Building. Corner of Griswold and Congress streets. Marquee extends approximately the entire width of sidewalk.

14—Barlum Hotel. Corner of Bates street and Cadillac square. Marquee extends approximately the entire width of sidewalk.

The marquee owned by appellant 1426 Woodward Avenue Corporation is an integral part of the store building at 1426 Woodward avenue, which building is occupied by D. J. Healy Shops. The building and marquee were constructed in 1910. The mar-

quee is constructed entirely of steel, is 60 feet in length and 20 feet in width, which is more than half the width of the sidewalk, and more than 10 feet, 6 inches, being the limitation imposed by ordinance No. 298-C, as amended. The marquee owned by appellant Graystone Ballroom, Inc., is an integral part of the building at 4237–45 Woodward avenue. It is constructed of steel, extends to within 16 inches of the edge of a 12-foot-wide sidewalk, being wider than one-half the width of the sidewalk. It exceeds, however, by only 2 inches the width of 10 feet, 6 inches. No petition was filed by the owner of the Graystone Ballroom marquee for a special permit to maintain it in its present size and condition. Both of said marquees referred to are constructed at the proper height, namely, not less than 8 feet 6 inches above the sidewalk level, and are supported entirely on the building on which they are erected.

The main issue in the case involving all the appellants is, whether the common council may prohibit the maintenance of existing projecting signs and regulate the size of marquees on Woodward avenue between Grand boulevard and the Detroit river, in said city, while permitting their maintenance, without restrictions, on other parts of Woodward avenue and other adjoining business thoroughfares, without regard to the reasons why such action is taken. The ordinance under consideration has as its purpose the removal of all existing projecting signs, and restricting the width of existing marquees on Woodward avenue from Grand boulevard to the Detroit river. It is conceded that the main, but not the sole, purpose of the ordinance is to improve the appearance of Woodward avenue.

The Michigan Constitution (1908), art. 8, § 28, provides:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The home rule act (1 Comp. Laws 1929, § 2238 as amended by Act No. 295, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 2238, Stat. Ann. § 5.2081]) authorizes each home rule city to provide:

"(1) For the use, regulation, improvement and control of the surface of its streets, alleys and public ways, and of the space above and beneath them."

The charter of the city of Detroit (title 3, chap. 1, § 12, subd. [g]) provides:

"The legislative powers and duties of the common council shall be as follows: * * * (g) To provide for the management and control of all property, including streets, alleys and other public places, belonging to the city, dedicated to its use or under its jurisdiction; to make provision for its protection, preservation and improvement."

The validity of ordinance No. 298-C and the amendment must be considered in the light of the powers granted home rule cities by constitutional and statutory provisions. Appellants contend that the exercise of the police power of the city of Detroit over its streets is limited by the constitutional requirement that the control shall be reasonable; that there must appear to exist an essential public need for its exercise in order to justify it; that mere aesthetic considerations cannot justify the prohibition and restriction here sought to be imposed on appellants; and that the absolute prohibition of the existence of projecting signs on Woodward avenue and the restriction of the size of existing marquees thereon under the guise of reasonable regulation exceeds the power of said city. We agree that the

crux of the issue in this case as to the legality of the ordinances in question is, whether they are within the constitutional right of the home rule city of Detroit to a "reasonable" control of its streets. However, control of streets is not limited to the surface, but includes the space above and beneath the surface.

At the outset, appellants insist that the sole and only reason for the action taken by the city is based on: "aesthetic" considerations; that the only purpose is to make Woodward avenue more beautiful. The record does not justify this position nor did the circuit judge so hold. No authority has been cited to us, or discovered by our research, holding that the reason for enactment of an ordinance must be stated therein. The record does not support appellants' claim that the commissioner of the department of buildings and safety engineering testified that the ordinances prohibiting signs and regulating marquees are based solely on aesthetic considerations. He testified:

"*Q.* So that what we are getting at is that there is no prohibition in any of these ordinances against the maintenance of projecting signs on streets other than Woodward avenue?

"*A.* That is right, sir.

"*Q.* Is that based wholly on aesthetics?

"*A.* I would say it is based on a matter of policy, whatever that may be.

"*Q.* You mean an arbitrary determination?

"*A.* Well, I would prefer that the 'powers that be' speak for themselves.

"*Q.* In other words, the 'powers that be' say so, and therefore, it is so?

"*A.* I am not in position to interpret.   *   *   *

"*Q.* You know, of course, Mr. Wolff, being the head of your department, what aesthetics is, and how it applies to the maintenance of streets, do you not?

"*A.* Yes, I think I do, but we confine ourselves to matters concerning safety.

"*Q.* And that is all you do confine yourself to?

"*A.* Yes, sir.

"*Q.* Just to safety?

"*A.* Safety, and—if you are speaking of the department, then of course there is a zoning ordinance which we enforce, which of course covers a great deal more of ground than just safety.

"*Q.* Now, in the case of the Healy marquee, it was and is your opinion that there is no connection between the maintenance of that marquee with safety?

"*A.* Well, I am not familiar with the physical condition of the marquee itself. I am assuming that it is reasonably safe, but I will say that any marquee or any sign may be made absolutely safe.

"*Q.* As a matter of fact, you know, do you not—

"*The Court:* Pardon me. You mean safe from falling, or what?

"*The Witness:* So that it would not be hazardous, falling, or any part of it falling down.

"*The Court:* Well, that does not apply to whether or not you could conveniently get at the building with fire ladders, or anything of that kind?

"*The Witness:* That is another matter, sir.

"*Q.* Well, that has to do with public safety, does it not?

"*A.* Yes, from the fire-fighting point of view. I can imagine where it might even facilitate fire fighting, as well as it might hinder it. I would say it depends entirely on the circumstances involved."

On cross-examination:

"*Q.* Now, one other question: On direct examination Mr. Abbott asked you something about the aesthetics, especially as it pertained to streets in the city of Detroit. What is your opinion as to the appearance of Woodward avenue, the appearance of the parts of Woodward avenue from which signs and marquees have been removed, or do not exist,

or which exist in compliance with the ordinance, as compared with the portion of Woodward avenue where signs and marquees exist in violation of the ordinance?    *    *    *

"*A.* My personal opinion, or an opinion given in my official capacity?

"*Q.* Do you care to give any such opinion? If you do not, say so.

"*A.* Personally, I would not mind saying that of course I have seen cities and streets that were devoid of signs and other obstructions and encroachments, and in my opinion I think that the architectural beauty of buildings is considerably enhanced. However, officially I have no right to render such an opinion."

It is a proper inference that a profusion of lights on such a street as Woodward avenue in Detroit may tend to a confusion of both pedestrians and drivers of motor vehicles in the nighttime. Furthermore, signs projecting over sidewalks may under some circumstances be considered a public nuisance and a menace to public safety. *Hass* v. *Booth*, 182 Mich. 173.

In support of their position that the ordinance here attacked is void if based solely on aesthetic considerations, appellants rely on *City of Youngstown* v. *Kahn Brothers Building Co.*, 112 Ohio St. 654 (148 N. E. 842, 43 A. L. R. 662), which is a case involving a zoning ordinance and the erection of an apartment house on private property; on *City of Chicago* v. *The Gunning System*, 214 Ill. 628 (73 N. E. 1035, 70 L. R. A. 230, 2 Ann. Cas. 892), and *Wolverine Sign Works* v. *City of Bloomfield Hills*, 279 Mich. 205, both involving ordinances pertaining to the erection of billboards on private property. None of these cases involves the constitutional and statutory powers of a home-rule city over the use, regulation, improvement and control of its streets

and of the space above and beneath their surface. They are not controlling here. Nor do we need to follow earlier cases involving restrictions on the power of cities, antedating the home rule amendment to the Constitution and legislation to effectuate its intent. The home rule act should be construed "liberally and in a home-rule spirit." *City Commission of Jackson* v. *Hirschman,* 253 Mich. 596, 599.

"Under the home-rule act cities have a general grant of rights and powers, subject only to certain enumerated restrictions, instead of former method of having only enumerated rights and powers definitely specified (1 Comp. Laws 1929, § 2228 *et seq.*).*

"A city with a home-rule charter may enact and put into its charter any provisions limited to purely municipal government that it may deem proper so long as they do not run contrary to the Constitution or to any general statute." *City of Pontiac* v. *Ducharme* (syllabi), 278 Mich. 474.

"Justification of the ordinance is predicated upon the so-called police power of government. The sovereign power of the State includes protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public. \* \* \*

"With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. *Goldstein* v. *City of Hamtramck,* 227 Mich. 263; 43 C. J. p. 569. A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. *Scott* v. *Smart's Executors,* 1 Mich. 295; *Sears* v. *Cottrell,* 5 Mich. 251; *Thompson* v.

---

* This is Stat. Ann. § 5.2071 *et seq.*—Reporter.

*Auditor General,* 261 Mich. 624. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. * * *

"Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power. Changes in such regulations must be sought through the ballot or the legislative branch." *Cady* v. *City of Detroit,* 289 Mich. 499, 504, 505, 514.

"In most of the States of the Union the municipalities possess only such power as is delegated to them by the legislature and delegated by express terms. This was true here before the Constitution of 1909 [1908?]. But the people by that instrument (art. 8, § 28) took from the legislature certain of its former powers over municipalities and reserved to them reasonable control over their streets in the following language:

" 'The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.'

"This is an expansion of the powers of municipalities rather than in derogation of them (*People* v. *McGraw,* 184 Mich. 233), and renders applicable the decisions of other States where the municipalities possess less power than here. * * *

"The legislative department of the city of Detroit has determined that this ordinance is for the public welfare, for the public good. Courts of last resort are daily enforcing police regulations that no member of the court would vote for if they were sitting as legislators. But sitting as members of the court they determine not the policy of the regulation but the two questions: (1) Has the municipality the power to enact the regulation? (2) Has such power been so arbitrarily and capriciously exercised as to make the regulation unreasonable and deprive the complaining party of their constitutional rights? With due regard to our function in the case, I think we should declare the ordinance before us valid as against the objections urged." *Red Star Motor Drivers' Ass'n* v. *City of Detroit*, 234 Mich. 398, 407, 418, 419.

In 1905, at a time when municipalities in this State possessed less power than they now possess under the home rule amendment and subsequent legislation, one Mrs. Forbes was the owner of a building at the junction of Lafayette and Michigan avenues in Detroit. The walls of the building were built upon the street line. Mrs. Forbes sought, and procured from the common council, permission to extend show windows or bay windows over the sidewalks. She proceeded to build the bay windows extending into the street, but before their completion the city revoked the permit and directed the removal of the encroachments. This court (*Forbes* v. *City of Detroit*, 139 Mich. 280) affirmed a decree upholding the abating of the so-called nuisance, and the requirement to remove the windows. We said (p. 283):

"There is a manifest propriety in denying the privilege of encroachment upon streets. While Mrs. Forbes is a sufferer without apparent fault upon her part, we see no way of relieving her."

In the case at bar appellants concede that the permits on which the encroachments in question were erected were revocable at will by the common council. We see no merit in the claim by appellant 1426 Woodward Avenue Corporation that its permit was not revoked. If in no other manner, the adoption of the ordinance amendment was a sufficient revocation of the permit, under the circumstances of its adoption. The circuit judge considered that the special permit provision in section 4 of ordinance No. 298-C was invalid. Judge Keidan granted a temporary injunction on that assumption, following which the common council by amendment to said section 4, effective October 23, 1941, eliminated this objectionable proviso. We entertain no doubt in saying that the permit of this appellant, revocable at the will of the city, has been revoked by the common council.

In *Roberts* v. *City of Detroit,* 241 Mich. 71, the court held that under the home-rule amendment the powers possessed under the previous charter of the city of Detroit were carried over into the new. The previous charter of Detroit (1904), § 175, p. 115, provided:

"The common council shall have power to survey, ascertain and establish the boundaries of all highways, streets, avenues, lanes, alleys, public parks, squares and spaces in said city.  *  *  *  To prohibit and remove all encroachments upon and obstructions in the same by buildings, fences or in any manner."

Appellants make no claim that the signs and marquees here in question do not constitute encroachments on the public street.

Aside from any aesthetic reason for requiring the removal of signs and the regulation of marquees encroaching on and over a street, municipal authori-

ties have full power to control such encroachments which obstruct light, air, view, rainfall or complete use of the street. *Fuller* v. *City of Grand Rapids,* 105 Mich. 529; *Weber* v. *City of Detroit,* 159 Mich. 14 (36 L. R. A. [N. S.] 1056); *Ann Arbor Lodge No. 325, Benevolent and Protective Order of Elks* v. *City of Ann Arbor,* 242 Mich. 340; *Long* v. *Railroad Co.,* 248 Mich. 437; 4 McQuillin, Municipal Corporations (2d Ed.), § 1453 (1349), p. 142; McQuillin, Municipal Corporations (2d Ed.), Rev. Vol. 3, § 984 (927), p. 242; 3 Dillon, Municipal Corporations (5th Ed.), § 1186; 37 Am. Jur. § 313, p. 969.

Appellants argue that the ordinance effective October 23, 1941, is invalid because it purports to prohibit or regulate only signs and marquees on Woodward avenue while failing to prohibit similar encroachments in other business or congested areas. As early as 1934 the common council enacted ordinances regulating the erection of signs and marquees projecting into the street along certain portions of Woodward avenue, and by subsequent amendments the ordinances now cover the length of Woodward avenue from Grand boulevard to the river. The fact that there are other congested business streets running into or paralleling Woodward avenue where signs and marquees similar to their own are not prohibited does not necessarily make the ordinance invalid. Woodward avenue is the leading business street of Detroit. Whether signs on Washington boulevard or Adams avenue should at the same time be similarly regulated is an administrative or legislative question for the common council. We are not prepared to hold that it is within the province of this court to dictate to a home-rule city what streets the city legislative authority shall include or exclude in prohibiting signs or in regulating marquees which project into the

streets. We do not hold that such ordinances must be city-wide, nor decide the extent to which they must be limited. In the instant case, admittedly Woodward avenue is the principal business thoroughfare of the largest city in Michigan. It is a wide street with multiple two-way traffic, with streetcar tracks and passenger platforms in the center. Modern automotive traffic is therein regulated by traffic lights. Conceivably it is in the interest of public safety that other lighted signs and marquees encroaching on the street be prohibited. Assuming that the ordinance applies only to future installations of marquees, that does not establish whether the common council may, or may not, enact similar legislation in the future when or if considered necessary, as to existing marquees, or as to other streets. Appellants argue that the ordinances are void because discriminating in effect. It doubtless can be said that all legislation is in some way discriminatory because it does not apply equally to all persons, all places and all situations alike. This is not sufficient reason for holding the ordinance void, under the circumstances of the case.

We conclude that the amendment to the ordinances under consideration was not unreasonable, does not infringe upon the constitutional limitation that the control of its streets by a municipality must be a reasonable control, and that it is a valid ordinance as against the objections raised. Other provisions in the decree are not before us. The decree is affirmed, but without costs, a question of a public nature being involved.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred. The late Justice WIEST took no part in this decision.