**Alice P. NELSON, Administratrix of the Estate of Ronald Nelson, deceased, Appellant,**

v.

**David R. KNOX, Robert C. Akins et al., Appellees.**

**No. 13155.**

United States Court of Appeals Sixth Circuit.

May 19, 1958.

Theodore F. Hughes, Berkley, Mich. (Hugh K. Davidson and Joseph A. Lang, Detroit, Mich., on the brief), for appellant.

Guy Bratton, Detroit, Mich., and James S. Thorburn, Royal Oak, Mich. (Bratton, Bratton & Roskopp, Detroit, Mich., on the brief), for appellees.

Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.

STEWART, Circuit Judge.

Ronald Nelson brought a civil action for damages against the Mayor, City Manager, and Commissioners of the City of Huntington Woods, Michigan, for alleged deprivation of his rights under the Fourteenth Amendment and the Civil Rights Act, 42 U.S.C.A. § 1983. The complaint alleged that the defendants had intentionally destroyed Nelson's garage business in Huntington Woods by passing and enforcing arbitrary and discriminatory ordinances. Upon the death of Ronald Nelson, his administratrix was substituted as plaintiff. See Nelson v. Knox, 6 Cir., 1956, 230 F.2d 483. After two days of a trial hearing the district court, at the conclusion of the plaintiff's case, granted the defendants' motion to dismiss the action, and this appeal followed.

Ronald Nelson started a garage business in Huntington Woods in 1946. The ordinances in question were passed in 1950 for the announced purpose of licensing, regulating, and controlling garage businesses, second-hand automobile businesses, and businesses con-

ducted for the sale of gasoline and oil. In addition to requiring licenses to engage in these occupations, the ordinances restricted the hours when such businesses could be conducted and also restricted the time and regulated the manner in which automobiles could be parked or stored.

Nelson secured a license in accordance with the ordinance provisions. He was, however, cited many times by Huntington Woods police officers for violations of other provisions of the ordinances, as were also his customers and prospective customers. The district court found that the enforcement of the ordinances seriously interfered with the operation of Nelson's garage until he discontinued the business some time in 1952.

The evidence showed that none of the defendants knew Nelson personally, and that the ordinances were passed only after numerous and persistent complaints from citizens of the community and after consultation with the City Attorney. The court found as a fact that "the ordinances and parking regulations here in question were not adopted or imposed because of any malice or ill-will of any of the defendants toward plaintiff's decedent."

The district court did not pass upon the constitutionality of the ordinances, but dismissed the action upon the grounds that the mere passage of an ordinance could not constitute a violation of the Civil Rights Act, and that the defendants as legislative officials were immune from civil liability. On this appeal the appellees rely upon these grounds, and, additionally, upon the doctrine of *res adjudicata,* contending that the ordinances have been held constitutionally valid by the Michigan courts.

As to the appellees' claimed immunity from liability under the Civil Rights Act, it is argued "that the law properly applicable to the case at bar has been well settled in the case of Tenney v. Brandhove, 341 U.S. 367 [71 S.Ct. 783,

95 L.Ed. 1019], * * *." The Tenney case held that the broad provisions of the Civil Rights Act do not operate to deprive state legislators of their historic immunity from civil liability for conduct within the sphere of legislative activity. The appellees also rely upon decisions holding that judges enjoy a like immunity despite the literal provisions of the Civil Rights Act, Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288; Francis v. Crafts, 1 Cir., 1953, 203 F.2d 809, and upon decisions of the Michigan courts enunciating similar principles. Amperse v. Winslow, 1889, 75 Mich. 234, 42 N.W. 823; Wall v. Trumbull, 1867, 16 Mich. 28.

■ We hold at the outset that the extent of the defendants' insulation from liability under the Civil Rights Act cannot properly be determined by reference to the local rule in Michigan. Surely each state cannot be left to decide for itself which of its officials are completely immune from liability for depriving a citizen of rights granted by the Federal Constitution. The question must be decided as a matter of general law.

■ In the light of the relevant federal decisions, we cannot agree that members of a municipal legislative body share the complete immunity from liability which is enjoyed by judges and state legislators. In Hague v. C. I. O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, the Supreme Court affirmed as modified a decree of injunction against the members of the Board of Commissioners of Jersey City, New Jersey, in an action brought under the Civil Rights Act. Nowhere in the five opinions filed in the Hague case does it appear that any of the seven Justices who participated were of the view that municipal legislative officials are clothed with such complete immunity.[1] To be sure, the present action is one for money damages rather than an injunction, but that difference does not affect the question of immunity. Indeed, the Supreme

---

1. The rulings of this court in Cuiksa v. City of Mansfield, and companion cases, 1957, 250 F.2d 700, did not involve the question of immunity of members of a municipal legislative body.

Court has pointed out that under the Civil Rights Act relief in equity should sometimes be withheld even where "comparable facts would create a cause of action for damages." Stefanelli v. Minard, 1951, 342 U.S. 117, at page 122, 72 S.Ct. 118, 121, 96 L.Ed. 138; see Williams v. Dalton, 6 Cir., 1956, 231 F.2d 646, 649; Cobb v. City of Malden, 1 Cir., 1953, 202 F.2d 701, 704–705.

It is our opinion that the defendants in this case were not clothed with complete immunity but enjoyed instead a qualified privilege. As to the nature and extent of the privilege, we are content to accept the well considered views of Chief Judge Magruder, shared by Judge Woodbury, as expressed in Cobb v. City of Malden, supra.

Drawing upon general principles of common law, Judge Magruder wrote:

"Hence I take it as a roughly accurate generalization that members of a city council, and other public officers not in the exceptional category of officers having complete immunity, would have a qualified privilege, giving them a defense against civil liability, for harms caused by acts done by them in good faith in performance of their official duty as they understood it. [citing cases] But on ordinary principles of the law of torts, I think that members of a city council would be liable in damages for pecuniary harm to a plaintiff intentionally inflicted by action, under color of official authority, which the defendants subjectively realized would result in depriving the plaintiff of a right or privilege secured by the Constitution of the United States. [citing cases] The privilege by way of defense to the prima facie federal tort defined in 8 U.S.C.A., § 43 should certainly be no broader than the privilege that would be accorded under the common law." 202 F.2d 701, at page 707.

Under this standard it is clear that the judgment in the present case should be affirmed. The district court found upon substantial evidence that the ordinance and parking regulations in question were adopted and enforced in complete good faith.

The order of dismissal is accordingly affirmed.

ALLEN, Circuit Judge (concurring).

I agree with my colleagues that the question of immunity from personal liability under the Civil Rights Act cannot be determined by local state decisions to the extent that it has been already determined by federal law. I consider unfortunate the failure of the majority opinion to state the corresponding rule that, when federal law is in the process of being developed on new questions such as those arising under the Civil Rights Act and has not taken shape with reference to a specific problem such as here presented, the courts are entitled to have recourse to the state adjudications as a basis of decision. This rule is followed in federal cases.

The particular field of immunity under the Civil Rights Act for official acts of municipal officers is one upon which the Supreme Court has not spoken. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, did not cover it. It is significant that neither Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, nor Cobb v. City of Malden, 1 Cir., 202 F.2d 701 (principally relied upon by my colleagues), cited the Hague case. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, involves no question of judicial immunity and has no bearing.

The principal opinion in the Cobb case, written by Judge Hartigan, comments on the fact that, while the complaint sets forth a cause of action created by Congress and hence the limits of liability must be governed by federal law, in the absence of any clear authority on the point of the city's responsibility, the Massachusetts law "properly defines the limits of liability which Congress intended." This is the only holding of the Cobb case in which all three

judges concurred. Judge Hartigan quotes from Picking v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 240, which points out that under R.S. § 1979 the Congress created a field "upon which a state officer could not tread without being guilty of trespass and liable in damages. The concept is clear enough but the boundaries of the forbidden territory are ill-defined." Judge Magruder recognizes the perplexities raised by these questions, Cobb v. City of Malden, supra, 202 F.2d 706, 707. He calls the rule upon which the majority of this court relies so strongly here "a roughly accurate generalization."

Tenney v. Brandhove, supra, in ruling upon the immunity of state officers, and the Cobb case, supra, both rely upon state law and state adjudications as a basis of decision. Tenney v. Brandhove, supra, 341 U.S. 373, 71 S.Ct. 783, cites Coffin v. Coffin, 4 Mass. 1, 27; Judge Magruder in making his "roughly accurate generalization" relies upon no federal case, but upon two state cases.

Cuiksa v. City of Mansfield, 6 Cir., 250 F.2d 700, does not involve the immunity of the members of a municipal legislature. Neither Tenney v. Brandhove, supra, nor the Cuiksa case, supra, announces any doctrine at variance with the general rule on these questions in numerous state decisions. 43 Am.Jur. 88, Public Officers, Section 275; 37 Am. Jur. 886, Municipal Corporations, Section 264 and cases cited.

The problem here is complicated by the merger of functions performed by a Home Rule city under the Michigan constitution, art. 8, § 21, and the Michigan statutes, Comp.Laws 1948, § 117. 1 et seq. None of the cases cited in the majority opinion rule on the question of enforcement of an ordinance such as that involved here. The question of enforcement is one of the factually important features of this case.

In the absence of a federal case precisely covering the various phases of this action, it seems proper for this court, as well as for the court of the First Circuit, to rely upon not only the persuasive authority but also the precedents of state cases covering similar situations. In this connection it may be noted that under the law of Michigan an ordinance of a Home Rule city carries the same presumption of constitutionality as applies to statutes passed by the legislature. 1426 Woodward Avenue Corporation v. Wolff, 312 Mich. 352, 20 N.W.2d 217. The immunity of commissioners of a Michigan Home Rule city by analogy would seem to be the same as that of members of the State Legislature of Michigan. Particularly pertinent on the question of enforcement, I think, are the following decisions: Municipal activities in general, including executive acts, are not subject to judicial control if they are legally authorized. Veldman v. City of Grand Rapids, 275 Mich. 100, 265 N.W. 790.

This case declares that the courts may not inquire into motives prompting the acts and conduct of a City Commission in making a contract that it was legally authorized to make. The Veldman case involved an executive act performed by municipal officers vested with discretion. It held that a court of equity could not interfere in municipal affairs unless a malicious intent, capricious action, or corrupt conduct was shown.

Under the early Michigan law various municipal activities were held to be judicial and therefore immune from attack in an action for money damages because of official acts honestly performed. Amperse v. Winslow, 75 Mich. 234, 244, 42 N.W. 823; Wall v. Trumbull, 16 Mich. 228, 235. The opinion in Wall v. Trumbull, written by Judge Cooley, was announced in 1867. The acts classified in these cases as judicial, nonapproval of a bond by a councilman (Amperse v. Winslow) and ruling on claims by township supervisors (Wall v. Trumbull) might today be considered to be acts of administrative officials vested with wide discretion, or quasi-judicial acts.

Cf. Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N.W. 635, 112 A.L.R. 269; R. & A. Realty Corp. v. Pennsylvania R. R. Co., 3 A.2d 293, 16 N.J.Misc. 537; Tillotson v. Fair, 160 Kan. 81, 159 P.2d 471.