**Roland E. YOUNG, Plaintiff,**

v.

**John R. CODER, Defendant.**

**Civ. No. 72–108.**

United States District Court,
M. D. Pennsylvania.

Aug. 17, 1972.

---

5. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

John P. Campana, Williamsport, Pa., for plaintiff.

Scott A. Williams, Williamsport, Pa., for defendant.

## OPINION

MUIR, District Judge.

### I. INTRODUCTION.

This action was brought under Section 1 of the Civil Rights Act of 1871 (42 U.S.C. § 1983) alleging that the defendant, Mayor of the City of Williamsport, summarily dismissed plaintiff from his position as Assistant Superintendent of Flood Control for the City of Williamsport because plaintiff was a registered elector of the Democratic Party, thus violating plaintiff's First Amendment rights of freedom of association and expression, and his right to due process of law guaranteed by the Fourteenth Amendment of the United States Consti-

tution. The plaintiff demands compensatory damages, punitive damages and reasonable attorney's fees. In his answer, the defendant denied that plaintiff was discharged because of his political party affiliations, and further, moved that the complaint be dismissed for failure to state a claim upon which relief can be granted. Because I felt that a decision on the important and sensitive constitutional questions presented by the *motion could only be made after full* consideration of the facts as disclosed at a trial, and because of the possibility that those facts would make unnecessary a ruling on the constitutional questions, I deferred a decision on the motion until trial in accordance with F.R.Civ.P. 12(d). *See* Commonwealth of Pennsylvania v. Brown, 260 F.Supp. 323, 357 (E.D.Pa.1966). Cf. Gibbs v. Buck, 307 U.S. 66, 76–77, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Equitable Life Assur. Soc. of United States v. Kit, 26 F.Supp. 880 (E.D.Pa.1939).

### II. FINDINGS OF FACT.

1. The plaintiff on June 10, 1971 was appointed Assistant Superintendent of Flood Control for Williamsport, Pennsylvania.

2. As Assistant Superintendent of Flood Control, Plaintiff was responsible for supervising work on the dikes, and the maintenance and testing of pump station machinery.

3. Plaintiff supervised the work of two full-time employees plus three additional summer employees. During times of flood conditions, plaintiff could have had responsibility of supervising from twenty to thirty men.

4. The Assistant Superintendent of Flood Control was responsible for assuming the duties of the Superintendent of Flood Control during the absence of the latter. The Superintendent was generally responsible for the flood control program for the City of Williamsport. Specifically, the Superintendent was in charge of maintenance and testing of the pumps and electrical circuits necessary for pump station operation, mainte-

nance of the dikes, and supervision of up to 600 men during serious flooding conditions.

5. The plaintiff is a registered Democrat.

6. The defendant qualified as mayor of Williamsport, Pennsylvania on January 3, 1972.

7. The defendant is a registered Republican.

8. On January 14, 1972 the plaintiff was discharged from his position by the defendant, effective January 28, 1972.

9. Plaintiff's supervisor was of the opinion that while Assistant Superintendent of Flood Control, plaintiff displayed a general lack of mechanical ability and that friction developed between plaintiff and those over whom he had supervision.

10. Prior to the plaintiff's discharge, the defendant called the Superintendent of Flood Control to his office and inquired as to plaintiff's job performance. The Superintendent disclosed plaintiff's lack of mechanical and supervisory ability, and said he felt that plaintiff should have progressed further after six months on the job.

11. The defendant prior to discharging the plaintiff consulted with defendant's legal counsel as to defendant's power to discharge the plaintiff.

12. Prior to discharging plaintiff, the defendant was aware of plaintiff's party registration.

13. One of defendant's reasons for discharging the plaintiff was that he believed the plaintiff incompetent as Assistant Superintendent of Flood Control for Williamsport, Pennsylvania.

14. Another reason of the defendant for discharging the plaintiff from his position was to replace a Democratic officeholder with a Republican officeholder.

15. At the time of his discharge, the plaintiff had not acquired full competency for his position as Assistant Superintendent of Flood Control of Williamsport, Pennsylvania.

16. The defendant believed that the plaintiff had performed inadequately as Assistant Superintendent of Flood Control for Williamsport, Pennsylvania.

17. The defendant acted in good faith in discharging the plaintiff.

18. The defendant in good faith believed that by discharging the plaintiff and appointing another person to the office of Assistant Superintendent of Flood Control for Williamsport, Pennsylvania he was increasing the efficiency of the staff charged with the responsibility for protecting persons and property in Williamsport, Pennsylvania at a time of flood.

19. The defendant discharged the plaintiff on what appeared to the defendant to be justifiable grounds.

20. The plaintiff did not request nor did he receive a hearing on his discharge.

21. Following notification of his discharge, plaintiff asked for and was granted an interview with the defendant. When plaintiff asked why he was being fired, defendant answered that "those who live by the sword, die by the sword."

22. In the foregoing discussion between plaintiff and defendant the defendant offered to recall the plaintiff to another position in the municipal government if a position became available which the defendant felt the plaintiff could perform competently.

## III. DISCUSSION.

The plaintiff has asked this court to declare unconstitutional the political dismissal of a public employee not protected by civil service or tenure in office. However, whether or not the plaintiff's dismissal was constitutional is irrelevant for I find that in this case the defendant mayor is immune from personal liability for the consequences of his actions. Therefore, until necessity compels me to do so, I decline to rule on the constitutionality of the "spoils system." *See* Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466,

80 L.Ed. 688 (1936) (concurring opinion of Mr. Justice Brandeis).

No immunity from liability is provided for by 42 U.S.C. § 1983.[1] However, courts have read into § 1983 the common law concept of absolute immunity in favor of certain public officials for actions taken pursuant to their official duties. Thus, immunity has been applied in favor of legislators, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); judges, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); and prosecutors and other judicial officers, Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966) (and cases cited therein).

The existence and extent of immunity applicable to public officials not within the above categories is somewhat uncertain. It is generally agreed that no absolute immunity exists, but that some form of qualified immunity is available. The prevailing attitude seems to be that public officials are immune from personal liability for acts done in "good faith." Pierson v. Ray, 386 U.S. 547, 557, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967); Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958); Endicott v. Van Petten, 330 F.Supp. 878 (D.C. Kan.1971). What constitutes "good faith" has received varying interpretations. The most often cited language is that of Chief Judge Magruder in Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953) (concurring opinion):

" . . . I think that members of a city council would be liable in damages for pecuniary harm to a plaintiff intentionally inflicted by action, under color of official authority, which the defendants subjectively realized would result in depriving the plaintiff of a right or privilege secured by the Constitution of the United States." 202 F.2d at 707.

This test was applied and immunity was found in a suit against a mayor, city manager, and the city commissioners, Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958), wherein the court concluded that the defendants acted in good faith in adopting and enforcing certain city ordinances which ruined the plaintiff's business, irrespective of the constitutionality of the ordinances. Some courts have apparently felt that Chief Judge Magruder's test of good faith action is too difficult a burden to place upon the plaintiff. In a suit against a school district superintendent and the members of the school board for allegedly firing the plaintiffs from their positions as teachers because of their union membership, the "good faith" test was applied but it was held: "At best, defendants' qualified immunity in this case means that they can prevail only if they show that plaintiffs were discharged on justifiable grounds. Thus here a successful defense on the merits merges with a successful defense under the qualified immunity doctrine." McLaughlin v. Tilendis, 398 F.2d 287, 290–291 (7th Cir. 1968). Cf. Robichaud v. Ronan, 351 F. 2d 533 (9th Cir. 1965).

Perhaps most enlightening is the application of the qualified immunity doctrine by the Supreme Court in Pierson v. Ray, *supra*. A group of white and Negro clergymen, while attempting to use a segregated bus terminal waiting room, were arrested by police officers pursuant to a statute which was later declared unconstitutional. In a suit against the police officers under 42 U. S.C. § 1983, the Court ruled that " . . . if the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow

---

1. § 1983 reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

even though the arrest was in fact unconstitutional." 386 U.S. at 557, 87 S. Ct. at 1219. Although there are obvious differences between the considerations applicable to a police officer making an arrest and a mayor discharging a municipal employee, I believe that the same test should be applied to the case at bar. Therefore, if the defendant reasonably believed that the discharge of plaintiff was within the defendant's constitutional authority, then he is immune from personal liability for the consequences even though the discharge may have been unconstitutional.

Under the test just invoked, and in my view under any of the tests previously mentioned, there are two reasons why the actions of the defendant must be held to have been taken in good faith. *First,* the mayor believed that the plaintiff had had an inadequate performance record as Assistant Superintendent of Flood Control and was thus justified in discharging him. The defendant mayor was responsible for assuring the efficient operation of municipal functions. That defendant had additional, wrongful motives for dismissing the plaintiff does not alter the fact that defendant had a duty to replace employees who appeared to him to be incompetent. *Second,* defendant reasonably believed his actions were constitutional. Whatever be the sins of the "spoils system," it has to date been considered a valid exercise of discretionary authority. Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971), cert. denied 404 U.S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972); American Federation of State, County and Municipal Employees A.F.L.-C.I.O. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971). In the *Shapp* case, the Pennsylvania Supreme Court held that the Governor of Pennsylvania was not in violation of the Constitution in discharging some two thousand state employees who had been hired by the previous administration. In view of these recent decisions, the defendant cannot be charged with the duty of anticipating sudden changes in constitutional law. Pierson v. Ray, *supra,* 386

U.S. at 557, 87 S.Ct. 1213. Having found that the defendant acted in good faith, I hold that he is immune from personal liability for the damages suffered by the plaintiff.

It has been justifiably contended that the granting of broad immunity from personal liability to political officers would emasculate 42 U.S.C. § 1983. Robichaud v. Ronan, 351 F.2d 533, 536 (9th Cir. 1965). However, I feel that the immunity granted to the defendant here is not so broad that it would protect a political officer from liability for acts designed to deprive an individual of his constitutional rights. Furthermore, although the question is not presented in this case, other remedies may be available under § 1983 to the victims of unconstitutional official action. Thus in a recent case, although officials had acted in good faith and were therefore immune from personal liability, declaratory and injunctive relief were held to lie against them for their unconstitutional acts. Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970).

## IV. CONCLUSIONS OF LAW.

1. The defendant is immune from personal liability to the plaintiff for the discharge of the plaintiff from his position as Assistant Superintendent of Flood Control for Williamsport, Pennsylvania, under the circumstances in this case.

2. The defendant reasonably believed that the discharge of the plaintiff was within the defendant's authority.

3. The defendant had the overall responsibility for assuring the efficient operation of flood control devices and personnel in Williamsport, Pennsylvania.

4. The defendant reasonably believed his actions in discharging the plaintiff were constitutional.

5. The acts of the defendant were not designed to deprive the plaintiff of a right guaranteed to the plaintiff by the Fourteenth Amendment of the United States Constitution.

6. At no time during his employment by the City of Williamsport, Pennsylvania was the plaintiff protected in tenure of office by contract or by civil service.

7. The plaintiff is not entitled to compensatory damages, punitive damages, or counsel fees.

An order in accordance with this opinion will be entered.