## REID *v.* CITY OF SOUTHFIELD.

1. MUNICIPAL CORPORATIONS—ORDINANCES—ZONING.

    Each case involving the validity of a zoning ordinance must be decided on its own facts.

2. SAME — ZONING ORDINANCES — DE NOVO REVIEW — FINDINGS OF FACT — COURT RULES.

    Zoning cases of a municipality are heard *de novo* on review, but special emphasis is laid upon factual findings of the trial court, such emphasis being required by the court rule which provides that findings of fact shall not be set aside unless clearly erroneous, with regard to be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it (GCR 1963, 517.1).

3. SAME—ZONING ORDINANCES—TEST ON REVIEW.

    The cardinal precept for appellate review of cases challenging the constitutionality of a municipal zoning ordinance is that of determining the "reasonableness" of the ordinance.

4. SAME—ZONING ORDINANCES—REASONABLENESS.

    A municipal zoning ordinance is constitutionally infirm where it bears no relationship to the health, safety, convenience, and general welfare of the inhabitants, and results in established injury to the property owner contesting it.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 14.
[2, 3] 58 Am Jur, Zoning §§ 229, 231, 255.
[4, 6] 58 Am Jur, Zoning §§ 21, 22.
[5] 58 Am Jur, Zoning § 16.
[7] 58 Am Jur, Zoning §§ 14–24.
[8] 58 Am Jur, Zoning §§ 28, 32, 33, 141, 207.
[9] 58 Am Jur, Zoning §§ 21, 22, 146.
[10] 58 Am Jur, Zoning §§ 21, 22, 66, 69, 79, 102.
[11] 5 Am Jur 2d, Appeal and Error § 1009.

5. SAME—ZONING ORDINANCES—PRESUMPTION OF VALIDITY—BURDEN OF PROOF.

> A zoning ordinance is presumed to be valid, and its challenger bears the burden of proving it otherwise.

6. SAME—ZONING ORDINANCES—REASONABLENESS.

> The determination of the reasonableness of a zoning ordinance depends upon an examination of various elements, considered individually, and then cumulated to produce the ultimate decision.

7. SAME—ZONING ORDINANCES—RESIDENCE.

> Determination of the validity of a zoning ordinance involves consideration of the character of the district, its peculiar suitability for particular uses, the conservation of property values, the general trend and character of building and population development, unsuitability for residential purposes, lack of market for such purposes, and whether the land will become "dead land" or nonincome-producing land without residential value.

8. SAME—ZONING ORDINANCES—VALUE—COMMERCIAL USE.

> The fact that property is favorably situated for commercial purposes and has a greater value as commercial property does not alone justify the rezoning of the property as commercial.

9. SAME — ZONING ORDINANCES — CONTINUANCE OF NONCONFORMING USE.

> Nonconforming use of property at the time of the adoption of a zoning ordinance is a factor in determining its reasonableness, but permitted continuance of the nonconforming use gives a property owner all the protection that he is entitled to where the ordinance is otherwise reasonable under the facts of a given case.

10. SAME—ZONING ORDINANCES—FINDINGS OF FACT.

> Judgment of trial court upholding ordinances of defendant city, rezoning property long used by plaintiffs for commercial purposes as greenhouse, flower and general nursery business, so as to restrict its future development to "education, research, office, limited" held, proper, where (1) the property was bounded on its various sides by a heavily used thoroughfare, a parochial school, a single-family residential development, and office buildings, (2) office use would generate obviously fewer traffic hazards than commercial development, (3) there was no evidence that the property was unsuitable for the uses to which it was restricted or that financing could not be ob-

tained for such uses, (4) the disparity in the value of the property, as restricted, and its value for commercial purposes was not confiscatory, (5) the restricted use did not run counter to projected population growth, and (6) proper construction plans would prevent the property from becoming dead land or nonincome-producing land, since, under the circumstances, the zoning was not unreasonable, plaintiffs being entitled only to the continuance of their present nonconforming use (City of Southfield 1963 Zoning Ordinances No 123, as amended, 1964, No 291, and 1965, No 325).

11. COSTS—APPEAL AND ERROR—PUBLIC QUESTION—CONSTITUTIONAL LAW—ZONING ORDINANCES.

No costs are allowed on appeal of action to determine constitutionality of a zoning ordinance as applied to particular land, a public question being involved.

Appeal from Oakland; Thorburn (James S.), J. Submitted Division 2 May 2, 1967, at Detroit. (Docket No. 1,648.)   Decided December 1, 1967.

Complaint by R. Warren Reid and Bernice N. Reid against the City of Southfield, seeking a determination that defendant's zoning ordinances were unconstitutional as applied to plaintiffs' property. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Leib & Leib,* for plaintiffs.

*James M. Ginn,* for defendant.

LESINSKI, C. J.  Plaintiffs appeal from a judgment below wherein the court found the zoning ordinances of the defendant city[1] here in controversy to be reasonable and constitutional as applied to plaintiffs' property and ordered plaintiffs' complaint, which sought an opposite determination, dismissed.

---

[1] City of Southfield, zoning ordinance No 123, 1963, as amended.

Plaintiffs have owned and operated a greenhouse, flower, and general nursery business on a portion of their multi-parcel property located on the west side of Southfield road, between Twelve Mile road and Twelve and One-half Mile road in the city of Southfield, Michigan, since 1929. Their property has a frontage of 462′ on Southfield road, and a total land area in excess of 5.8 acres. The property was zoned single-family residential under Southfield's 1963 ordinance, and rezoned ERO–1[2] by the subsequent adoption of two amending ordinances.[3] In 1964, plaintiffs made application to the planning commission to have the property rezoned commercial which was refused—as was plaintiffs' request for rehearing. Plaintiffs' present operation of the business described above is a legal nonconforming use. It was plaintiffs' future intention to expand this use which led to its application for rezoning and eventually to this litigation.

The sole issue presented to the trial court and to this Court on appeal challenges the constitutionality of the ordinances as applied to plaintiffs' property. The plaintiffs readily conceded this point on comprehensive questioning by the trial court. Our discussion and determination is necessarily confined thereto, although the trial court, in an exemplary demonstration of a court according the fullest possible hearing to the parties, permitted other issues to be raised inferentially at trial.[4]

---

[2] According to the ordinance, ERO–1 is defined as education, research, office, limited. Section 801 of the ordinance, as amended by ordinance No 307, 1965, sets forth the permitted uses within an ERO–1 district. These include: uses for research and technical training; uses resulting from such occupations as executive, administrative, professional, accounting, writing, clerical, stenographic, drafting, and sales; and banks and similar financial institutions.

[3] Zoning ordinance No 291, 1964, and zoning ordinance No 325, 1965.

[4] We take this opportunity to commend counsel for their thorough trial and appellate presentations, which afforded this Court comprehensive material on which to base a decision.

The exhibits and testimony reveal that commercial uses are concentrated at or near the intersections of Twelve Mile and Southfield roads and Thirteen Mile and Southfield roads. Plaintiffs' property is not so situated. Between the above-named intersections, the zoning is office and residential. Parts of the area are being developed for office purposes in accordance with the recommendations of the city planning commission. The plaintiffs' property is bounded on the east by Southfield road, a heavily trafficked thoroughfare, on the south by a Catholic parochial school, on the west by a single-family residential development, and on the north by property zoned ERO–1, on which there is office building construction.

At trial witnesses for both parties testified as to the character of the area, the suitability of the property for particular uses, property value, the general trend of development of the area, financing, business opportunities, and the tendency (or lack thereof) of the ordinances to promote the public health, safety and general welfare.

Counsel provided this Court with some 50 case and statutory authorities in support of their respective positions. Scrutiny of these cases reveals the development of basic principles and guidelines where a given zoning ordinance is challenged as to its constitutionality as applied to specific property. It is noteworthy that in the vast majority of the cases cited by the parties the zoned property under discussion had been designated by the ordinance as residential. This brings us to one of the many guidelines referred to above, which is that each such case must be decided on its own facts. *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508, and cases cited therein.

. Another preliminary principle involves what has been termed *de novo* review, coupled with special

emphasis laid upon the factual findings of the trial court. *Christine Building Company, supra.* This concept is similarly reaffirmed in GCR 1963, 517.1, which deals generally with findings by the court as follows:

"Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

The cardinal precept for appellate review of cases challenging the constitutionality of a zoning ordinance is that of determining the "reasonableness" of the ordinance. Where an ordinance bears no relationship to the health, safety, convenience, and general welfare of the inhabitants, and the injury to the property owner contesting it is established, the ordinance has been found constitutionally infirm.[5] The ordinance is presumed valid and its challenger bears the burden of proving it otherwise. *Muffeny* v. *City of Southfield* (1967), 6 Mich App 19.

The determination of reasonableness has been subdivided into various elements which are considered individually, and then cumulated to produce the ultimate decision. We employ the components reiterated in *Alderton* v. *City of Saginaw* (1962), 367 Mich 28, 34, in analyzing the circumstances of the instant case.[6]

---

[5] See generally, *Nectow* v. *City of Cambridge* (1928), 277 US 183 (48 S Ct 447, 72 L ed 842) ; *Schaefer* v. *City of East Detroit* (1960), 360 Mich 536; *Warner* v. *City of Muskegon* (1955), 344 Mich 408; and *Janesick* v. *City of Detroit* (1953), 337 Mich 549.

[6] "In determining validity of an ordinance we give consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development * * * unsuitability for residential purposes * * * lack of market for such purposes * * * and whether the land will become 'dead land' or nonincome-producing land without residential value." (Citations omitted.)

The character of the district has been set forth above. It is apparent that zoning which provides for office uses is in keeping therewith. As in *Hungerford* v. *Township of Dearborn* (1960), 362 Mich 126, the trial court viewed the property, and we attach importance to the findings which resulted from that view. At this juncture we note that there was considerable testimony relative to traffic volume on Southfield road, and we adopt the trial court's statement that "obviously less traffic hazards will be encountered with office use than would be generated by commercial development."

The suitability of this property for the particular uses to which it is limited is our next consideration. It is in this context that cases where the fact situation discloses controversy over residential zoning are, to a large extent, irrelevant. The uses permitted under ERO–1 zoning are varied, as set forth in footnote 2, *supra*. Language in *Anderson* v. *City of Holland* (1956), 344 Mich 706, 710, 711, where the property was zoned "B residential" and the plaintiff sought "C commercial" zoning does have relevance here.

"We are not, in other words, dealing with a situation in which the property involved is unsuitable for residential purposes and has little or no value if so restricted. For this reason prior decisions of this Court presenting such a situation, some of which counsel for plaintiff have cited in their brief, are not in point.  *  *  *  It may be noted also that the case at bar does not involve a claimed depreciation in the value of property as a result of the enactment of a zoning ordinance imposing restrictions to which the property was not previously subject. On the contrary, plaintiff's position here is that his land should be freed of the zoning restrictions imposed by the ordinance of 1926 to the end that he may

have the benefit of the increased valuation that, it is claimed, would result."

The next question involves suitability of the property for the use zoned. Although plaintiffs stress the fact that one of their witnesses testified that the property was not suitable for office use, on cross-examination he was asked:

"*Q.* You testified that the land would not be desirable for office use. Would it be a fair statement that what you meant was that the land was not as desirable for office use as it is for commercial use, in your opinion?

"*A.* That is true."

The other witnesses for plaintiffs expressed a preference for commercial use; however, they did not specifically state that it was unsuitable for office use. We will develop the testimony as to the possibility of "dead land" *infra.* There was controversy over the availability and ease of obtaining financing if the zoning were to remain ERO–1. However, none of the witnesses considered it economically unobtainable.

On the question of conservation of value in the area, plaintiffs place considerable weight on testimony tending to show that the property would have greater value if zoned commercial. According to a table developed by the plaintiffs from the testimony, the highest value placed on the property, if zoned commercial, as given by one of the plaintiffs' witnesses, was $510,000. Plaintiffs' other witnesses placed their estimates at $375,000 and $315,810. Defendant's witnesses placed a value of $250,000 and $204,300 on the property if zoned commercial. Plaintiffs' witnesses testified to an estimated value as zoned of from $125,000 to $151,588. Defendant's witnesses estimated from $161,000 to $205,000. As

the Michigan Supreme Court stated in *Penning* v. *Owens* (1954), 340 Mich 355, 367:

"The fact that the Owens' property is favorably situated for commercial purposes and has a greater value as commercial property does not alone justify the rezoning of the lots as commercial."

In the leading United States Supreme Court case in this area, *Village of Euclid* v. *Ambler Realty Company* (1926), 272 US 365 (47 S Ct 114, 71 L ed 303), the Court refused to declare an ordinance invalid despite a claim that the property as zoned was worth $2,500 and that it would be worth $10,000 if it were zoned for industrial uses. The disparity in values presented by the instant case does not approach *Euclid* proportions, and certainly is not confiscatory. Additionally, this is not a case where the value of the property has been destroyed by a change from business to residential zoning, and therefore cases where such a change has been struck down by the courts are factually inapplicable.

The general trend and character of the area were described in the foregoing discussion. As mentioned above, there is office building construction to the north of plaintiffs' property, and a parochial school to the south of it. It is apparent that the zoning contested here is in keeping with the general trend and character of the building.

There was testimony relating to the population development in the area of plaintiffs' property, which is situated in a rapidly growing community. However, it would unduly lengthen this opinion to discourse upon this testimony, as the zoning here at issue does not run counter to this growth, and the testimony did not aid the plaintiffs in this cause. We also do not discuss the question of unsuitability for residential purposes, set forth as one of the

determinants in *Alderton, supra,* as it is not relevant to the facts of the instant case.

The element of marketability has been covered in the context of suitability and conservation of values. At this point we may dispose of plaintiffs' theory that the zoning ordinance does not provide for adequate protection of their present nonconforming use. *City of Hillsdale* v. *Hillsdale Iron & Metal Company, Inc.* (1960), 358 Mich 377, 383, answers this argument.

"Defendant suggests a novel theory, which we do not adopt, that the existing nonconforming use of its property itself renders the zoning unreasonable. It is a factor in determining reasonableness, to be sure, but under the facts in this case the permitted continuing nonconforming use, in the midst of the neighboring residences, gives the defendant all it is entitled to on that score."

The final component in determining reasonableness deals with the question of whether the zoning creates "dead land." Plaintiffs contend that if the land is used for office purposes, the inevitable result will be the creation of dead land as the full depth of the property cannot be so utilized. Defendant's answer to this is simply that this would depend upon the construction plan. This answer has merit. If the construction resulted in dead land, the fault would lie with those responsible for its planning rather than with the ordinance.

We find the ordinance reasonable, within the police power of the city of Southfield, and accordingly, affirm.

No costs as a public question is involved.

J. H. GILLIS and WEIPERT, JJ., concurred.