## VAN ARSDEL v ADDISON TOWNSHIP

1. ZONING—ORDINANCES—PRESUMPTIONS—CONSTITUTIONAL LAW.

    A zoning ordinance is clothed with a presumption that it is constitutionally valid.

2. ZONING—ORDINANCES—CONSTITUTIONAL LAW—BURDEN OF PROOF.

    The burden is on the party attacking the constitutional validity of a zoning ordinance to establish that the ordinance has no reasonable, substantial relationship to health, safety, morals, or general welfare.

3. ZONING—ORDINANCES—CONSTITUTIONAL LAW—FUTURE USE.

    The test used to determine the constitutional validity of a zoning ordinance is whether the ordinance is unreasonable as it presently stands, not whether there might be some better or more profitable use of the zoned land.

4. ZONING—APPEAL AND ERROR—FINDINGS OF FACT.

    The appellate court tries a zoning case de novo, but great weight is given to the findings of fact made by the trial court.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 October 13, 1971, at Lansing. (Docket No. 10321.) Decided January 18, 1972.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 16.
[2] 58 Am Jur, Zoning §§ 16, 21.
[3] 58 Am Jur, Zoning § 14 et seq.
[4] 58 Am Jur, Zoning §§ 229, 231.

Complaint by Billy Van Arsdel against the Township of Addison to have a zoning ordinance declared unconstitutional. Robert C. and Joanne G. Small were allowed to intervene as defendants. Judgment for defendants. Plaintiff appeals. Affirmed.

*Dell, Shantz, Booker & Schulte,* for plaintiff.

*Parenti, Treinen, Barry & Bobberts,* for defendant Township of Addison.

Robert C. Small, for intervening defendants Small.

Before: McGregor, P. J., and Holbrook and Van Valkenburg,* JJ.

McGregor, P. J. This is a case attacking the validity of a zoning ordinance. The trial court, sitting without a jury, heard the case and issued a comprehensive finding of facts in his opinion, which the record sustains, and which we quote:

"Plaintiff Billy M. Van Arsdel, a property owner and real estate broker, purchased 154 acres of land in Section 19 of Addison Township, defendant, on July 28, 1966. At that time and until the present the permitted use under the township zoning ordinance is "agricultural". In such areas only one-family dwellings on not less than ten-acre parcels are allowed.

"In the fall of 1966 the plaintiff became the supervisor of the township and continued in that office through 1967. During the summer of 1967 the plaintiff decided that his property could be profitably

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

used for industrial purposes. He believed that he could successfully finance and develop a light industrial plaza. To that end he petitioned the Township Zoning Board for a rezoning of his property to an "industrial" district. The board approved the change and forwarded their recommendation to the County Coordinating Committee whose membership included the plaintiff. That committee also approved the change (the plaintiff not voting) and returned the matter to the Addison Township Board for final disposition.

"On November 20, 1967, in a tumultuous meeting attended by more than 100 citizens, the township board denied plaintiff's petition for re-zoning. Shortly thereafter the plaintiff resigned as township supervisor and this suit was commenced on January 22, 1968. In his complaint the plaintiff says that the provisions of the zoning ordinance as applied to his land have no real relation to the public health, welfare, and safety and have taken from him the useful value of his land. It is his position that the taking is arbitrary, capricious, and confiscatory and hence unconstitutional.

"The defendant township takes issue with plaintiff's stated position. It insists that the ordinance provides a reasonable regulation of land use in the township consistent with the needs of the community and should be sustained. The intervening defendant, Dr. Robert C. Small, is a landowner whose property borders plaintiff's land on the north. He is presently chairman of the Township Planning Commission, successor by ordinance amendment to the zoning board of 1967. He opposes a change in zoning in an area that in his opinion is best suited to agricultural and residential uses.

"Plaintiff's land is open and basically unimproved. The only actively used building is an old and poorly maintained farmhouse occupied by renters. The farm outbuildings are in various stages of disrepair. No public utilities except electric power and tele-

phone are available. A view of the property by the court and testimony offered at the trial disclosed that there has been no active farming of the land for some years.

"The acreage borders Lakeville Road on the south. That road is hard surfaced carrying a medium amount of traffic and is used by trucks carrying gravel from mining operations in nearby Oxford Township. On the east the land borders on Hosner Road, best described as a gravel surfaced country road. A railroad right-of-way parallels Lakeville Road and splits the land. About one-third of the acreage lies between the railroad and the road.

"During the trial the railroad track was mentioned a number of times. It does exist and it does divide the plaintiff's land but its overall influence on the area environment was over-emphasized. It is used only on rare occasions by gravel-carrying trains. Except as it would be convenient to industrial activity, it neither adds to nor detracts from the natural beauty of the whole area.

"As to the natural environment of the area, including and surrounding the plaintiff's property, this court observed an open and rolling terrain interspersed with woodland, quiet in contrast with commercial and industrial activities in Oxford Township. New and attractive homes have been built or are in the course of construction close by the plaintiff's land. The auction house on Lakeville Road is no longer active. The dump where used cars were dismantled and portions burned is no longer operative. The heavy equipment stored across the road from plaintiff's land is being used to create a pond and the one area where industry is permitted by ordinance is not presently used for that purpose. All in all, one gets the impression of a quiet restful countryside occupied by people who work in other communities and come home to the comfort of homes set in attractive wooded sites.

"Plaintiff would change that environment. He purchased his land four years ago for $280 per acre but will not sell for $1,000 per acre today. He believes, and probably with reason, that if a change in zoning is had his land would then be worth some $3,000 per acre on the market.

"One of plaintiff's witnesses testified that despite the great growth in population and industrial activity in the metropolitan area of Detroit the immediate area around plaintiff's property has changed very little in the past ten years. Those who have recently come into the community have built their homes on parcels of ten acres or more. Any commercial or industrial use that did exist has in large part become inactive. The fact that the one area in the township zoned for industrial purposes, less than a mile from plaintiff's property, is no longer used for that purpose indicates to this court that there is neither demand or need for industrial use in the community.

"Plaintiff's witness, Mr. Herbert Herzberg, an exceptionally well qualified appraiser and planner, testified that industrial use of plaintiff's land would lessen the value of adjacent home areas and would cause increased noise. On the other hand, he conceded that such permitted use would increase the value of plaintiff's property. Further he said that in his opinion industrial development would not occur in the community for at least five or six years. Other credible witnesses were of the opinion that public water service and a sanitary disposal system will not be available for roughly 20 years.

"The water level table on the plaintiff's land is admittedly high and there are no public drains. Although a lagoon system of sewage disposal has proved adequate in one mobile home area in the township, there exists the possibility that industrial use of the plaintiff's land might cause pollution on adjoining properties. No present use in the community offers a like possibility.

"In the event of industrial use, traffic would be increased on the adjacent secondary roads over existing conditions. The use of the now relatively inactive railroad would likewise be increased. The inevitable result would be less desirable homesites for the long time residents and for those who have recently built in the rural environment.

"When the zoning ordinance was originally enacted the drafters recognized the then existing use. They are presumed to have believed that such use was a reasonable and desirable one. The wisdom of their decision is proved by the continuing and developing use of the area for suburban homesites. Clearly there has been a direct and successful relationship between the imposed zoning and the welfare of the community. The public health and safety of the community have been maintained.

"To now change that stable situation by creating the danger of polluted lands, increased traffic on presently comfortable highways, diminished value of adjacent homesites and a radical change in the quiet peaceful environment would, in the opinion of this court, adversely affect the public health and welfare of the community.

"It is therefore the court's opinion and finding that the present township zoning ordinance reflects an existing use desired by the people of the community and has a reasonable relationship to the health, welfare and safety of those persons. The ordinance is a valid exercise of the zoning powers of the township as prescribed by statute. A judgment may enter to that effect. Dated: August 11, 1970."

Plaintiff presents several issues for this Court's consideration. However, all of the issues hinge upon the basic issue of whether the trial court erred in its determination that the proposed zoning change would adversely affect the public health and welfare of the township, and whether the existing ordinance

reflects the desires of the community and has a reasonable relation to the health, welfare, and safety of those persons. Inherent in this determination is whether the ordinance is unconstitutional as applied to the plaintiff's property.

"The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow* v *Cambridge*, 277 US 183, 188; 48 S Ct 447, 448; 72 L Ed 842, 844 (1928).

There are numerous well-settled propositions of the law that should be set forth. Professor Michael H. Feiler, in his article, *Metropolitanization And Land Use Parochialism—Toward a Judicial Attitude,* 69 Mich L Rev 655, 677 (1971), states pertinently:

"A private property owner should be able to advance in court the inquiry whether his property rights are being interfered with for a legitimate purpose—one reasonably related to the promotion of the public health, safety, welfare, or morals. This proposition is stated simply:

"' * * * governmental power to interfere with general rights of landowners by zoning regulations restricting the character of use of property is limited to restrictions which bear some substantial relation to the public health, safety, morals, and general welfare * * * Under the guise of the police power legislatures may not impose unnecessary and unreasonable restrictions on the use of private property in pursuit of useful activities. E. Bassett, Zoning 77 (1936), citing *Seattle Trust Co* v *Roberge,* 278 US 116, 121; 49 S Ct 50, 51; 73 L Ed 210, 213 (1928).'"

Plaintiff should be able to establish the *prima facie* unreasonableness of the ordinance by reference to the applicable constitutional policies and at least enjoy immunity from zoning restrictions to the extent that the township cannot show a countervailing necessity that outweighs the impingement on the state policy. A zoning ordinance is clothed with a presumption of validity and it is the burden of the attacking party to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425 (1957). While the role of the courts is greater than merely to bow to the local planning judgment, the efficacy of the judicial process requires the courts to ascertain those instances in which private rights have been reduced without commensurate public benefit. The burden is upon the attacking party to establish that the ordinance has no reasonable, substantial relationship to health, safety, morals, or general welfare. *Rottman v Waterford Twp,* 13 Mich App 271 (1968); *Dusdal v City of Warren,* 23 Mich App 583 (1970); *Parkdale Homes, Inc v Clinton Twp,* 23 Mich App 682 (1970).

The test is whether the zoning ordinance is unreasonable as it now stands, not whether there might be some better or more profitable use of the land. While this Court tries an equity case *de novo,* great weight is given the findings of fact made by the trial court. *Biske v City of Troy,* 381 Mich 611 (1969); *House v Bloomfield Hills,* 18 Mich App 184 (1969).

After a most thorough review of the record, this Court has determined that the trial court did not commit reversible error in its holding.

The record fully supports the trial court's finding that the ordinance in question bears a reasonable

and substantial relationship to the health, welfare, and safety of the township. The plaintiff failed in his burden to prove the ordinance is unreasonable and failed to prove that the ordinance does not bear a reasonable, substantial relationship to the health, welfare, safety, or morals of the township. The most plaintiff did prove was that he is not able to derive maximum profit from his property because of the restrictions of the ordinance, but, as said, the test of the constitutionality of a zoning ordinance is not one of profitability.

Finding no reversible error, we affirm. Costs to defendants and intervening defendants.

All concurred.