## SUN OIL COMPANY v CITY OF MADISON HEIGHTS

### OPINION OF THE COURT

1. ZONING—SIZE OF SIGNS—TRAFFIC HAZARD.

A zoning ordinance may properly be used to regulate size and location of signs so as to prevent their becoming a traffic hazard.

2. ZONING—AESTHETICS.

A zoning ordinance may not be based exclusively on aesthetic considerations, but in determining if an ordinance furthers the public welfare aesthetics may validly be considered.

3. ZONING—ADVERTISING.

A zoning ordinance may not prohibit advertising but it may regulate the manner of advertising so that it blends into the environment which the community seeks to preserve.

4. ZONING—HEIGHT OF SIGNS—REGULATION.

A zoning ordinance may properly limit the height of business advertising signs along an expressway where the signs might present a traffic hazard by interrupting a driver's concentration on traffic, where the signs may be aesthetically unpleasant and hence interfere with a citizen's civic pride.

5. ZONING—VARIANCE—HARDSHIP.

A variance to a zoning ordinance will be granted only where the hardship upon which the request is based is unique to the land itself and the land cannot be used profitably without the variance; the fact that the property would be worth more if the variance were granted will not be sufficient to sustain the variance.

### CONCURRENCE BY TARGONSKI, J.

6. ZONING—AESTHETICS.

*A zoning ordinance should not regulate on the basis of aesthetic*

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 58 Am Jur, Zoning § 74.
[2, 6] 58 Am Jur, Zoning § 30.
[5] 58 Am Jur, Zoning §§ 139, 140.

*considerations where the ordinance provides no standards for making decisions based on aesthetics.*

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 December 7, 1971, at Lansing. (Docket No. 11277.) Decided May 25, 1972.

Complaint by Sun Oil Company against the City of Madison Heights, the Madison Heights Board of Zoning Appeals, and John P. Paquette, chairman of the board of zoning appeals, to have defendants' zoning ordinance declared unconstitutional as applied to a proposed sign plaintiff desired to build and to establish plaintiff's right to a hardship variance. Judgment for plaintiff on both points. Defendants appeal. Reversed as to both holdings.

*Nolan, Hoeberling & Bromley,* for plaintiff.

*Kasoff, Young, Gottesman & Kovinsky,* for defendant.

Before: McGregor, P. J., and Bronson and Targonski,* JJ.

Bronson, J. This suit arises out of defendant city's Board of Zoning Appeals denying plaintiff's request for a variance from the applicable zoning ordinance provisions. The matter was appealed to the Oakland County Circuit Court and, after testimony, the trial judge reversed the zoning board of appeals. This appeal follows of right.

Plaintiff, Sun Oil Company, occupies property known as 501 West Fourteen Mile Road, Madison Heights, Michigan. The property is zoned for gasoline station use and is adjacent to the I-75 Inter-

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

state Expressway and the Fourteen Mile Road entrance and exit. Defendant Madison Heights Zoning Board of Appeals refused plaintiff's request to erect a high-rise sign of sufficient size and height to inform motorists traveling the I-75 Expressway of plaintiff's location and its desire to serve them.

Section 10.511(1) of the Madison Heights Zoning Ordinance prohibits free standing signs over 20 feet in height. Plaintiff alleged that the denial of a variance from this prohibition was arbitrary, unreasonable, and unconstitutional. It alleged that such a denial prohibited the highest and best use of the land resulting in irreparable damage to its business. Defendants asserted the board of appeals' action was proper and within the standards set by the zoning ordinance.

At the trial, plaintiff contended that it purchased the property as an expressway service station expecting to pump 85,000 gallons of gasoline per month and that, although expected traffic counts had been met, only 19,000 gallons per month were pumped in 1969. The parties stipulated that traffic exceeds 52,000 vehicles per day on I-75 and 37,000 per day on Fourteen Mile Road.

Kermit Bellette, city planner for Sterling Heights, Michigan, testified that one could not safely exit I-75 after discovering the location of plaintiff's property. He further testified that it was difficult to exit, knowing the location beforehand, at 65 miles per hour and that the trade a business is trying to attract should determine height limitations on signs.

Elmer Dreim, plaintiff's assistant regional engineer, testified that a sign up to 100 feet can be constructed without endangering the community and without engineering problems. He also stated

that such signs are designed to resist 70-mile-per-hour winds.

Plaintiff's real estate representative testified that the station 'was opened to serve expressway traffic but had never come close to expected sales. In his opinion, the primary reason for this was lack of proper identification. He conceded that both dealer and traffic affect sales volume, that a great deal of traffic passes the station on Fourteen Mile Road, and that sales at this location are not totally dependent on a high-rise sign. He also conceded that the station was making money, although not as much as expected.

Charles Michalski, a traffic engineering consultant, testified for defendants that the requested sign could create a safety problem as it was only briefly visible to a driver going north and would appear to be on top of J. L. Hudson's building in the Oakland Mall to a driver going south. He also testified that such a sign could divert a driver's attention from the road, creating a hazard due to the heavy traffic in the area.

Finally, Todd Kilroy, Madison Heights city planner, testified that the limitation was necessary to prevent a danger to the motoring public and to prevent a forest of such signs in the community. He also stated that, in his opinion, there is a difference between urban and rural areas and that drivers expect to find gasoline stations at freeway exits in urban areas.

The trial judge ruled that the ordinance was unconstitutional both in its total terms and as applied to plaintiff. The basis of his decision was that the 20-foot limitation to all signs was unreasonable since it did not make concessions for businesses which depend on such advertising and provided no means for considering special needs. As

to the plaintiff, the judge held that it had a special need justifying such a sign and that to deny its request was unreasonable.

In reviewing this case, we take special note of our function in zoning cases. The ordinance comes to us clothed in every presumption of validity and the party attacking it has the burden of proving it unreasonable and arbitrary. As the Supreme Court said in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 432 (1957):

" * * * This is not to say, of course, that a local body may with impunity abrogate constitutional restraints. The point is that we require more than a debatable question. We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness. * * * "

To stand against appellate review, the ordinance must bear a "reasonable" relationship to the health, safety, convenience, and general welfare. *Reid v Southfield,* 8 Mich App 553 (1967). In determining whether the ordinance is reasonable, we consider the district's character, its suitability for particular uses, the conservation of property values and the general trend and character of building and population development. *Alderton v Saginaw,* 367 Mich 28 (1962).

Involved in the instant case is the businessman's right to advertise on his property and the city's right to regulate the proposed advertising method. The ordinance in question prohibits free-standing signs higher than 20 feet. The reason given by defendant for this ordinance is the public safety and aesthetics. The ordinance must fail if it unreasonably deprives property owners of the use of

their property. See *Brae Burn, Inc v Bloomfield
Hills, supra.*

A municipality may make reasonable regula-
tions on the use of signs. *Wolverine Sign Works v
Bloomfield Hills,* 279 Mich 205 (1937). This in-
cludes limitations on size and height. See *General
Outdoor Advertising Co v Indianapolis,* 202 Ind 85;
172 NE 309 (1930). The trial judge held that
plaintiff's evidence proved that high-rise signs can
be constructed with complete safety. This is unre-
butted in the record, but we do not believe this
establishes a *prima facie* case of unreasonableness.

Ability to construct a safe sign which can with-
stand high winds is not the only factor which goes
to the public's safety. A careful review of this
record indicates that there was evidence intro-
duced at trial which showed that a high-rise sign
could be a hazard to drivers on the I-75 express-
way since it would divert their attention from
traffic or confuse them; that if the sign increased
plaintiff's business, 200 additional cars would be
brought onto Madison Heights streets each day;
and that exiting I-75 at Fourteen Mile Road could
be hazardous even when the driver knows the
location of plaintiff's station beforehand. While
safety of the roads is primarily a police responsi-
bility, the creation of a traffic hazard is a valid
consideration on which to base certain parts of a
zoning ordinance. *Sandenburgh v Michigamme Oil
Co,* 249 Mich 372 (1930); *1426 Woodward Avenue
Corp v Wolff,* 312 Mich 352 (1945); *cf Desert Out-
door Advertising v County of San Bernadino,* 63
Cal Rptr 543; 255 Cal App 765 (1967); *Naegle
Outdoor Advertising Co v Village of Minnetonka,*
281 Minn 492; 162 NW2d 206 (1968). To prevent
such a hazard, a municipality may limit a sign's
dimensions along its thoroughfares in exercising

its police powers. In addition, it may prevent the placing of signs which obstruct light, air, rainfall, or use of the streets. 18 Callaghan's Michigan Civil Jurisprudence, Municipal Corporations § 224, pp 24–25. We have given every deference to the learned trial judge's findings of fact. However, on this record we believe he was presented with at most a debatable question as to a high-rise sign's effect on the public safety.

The ordinance in question was also based on aesthetic considerations.[1] While it may not be the sole force, aesthetics can be incidental to the valid exercise of the police power. *Wolverine Sign Works v Bloomfield Hills, supra.* The trial judge recognized this but felt it was a secondary consideration to the right of certain businesses to advertise to expressway traffic. One of the reasons for holding the ordinance unconstitutional was its failure to recognize the need of certain businesses for high-rise signs. We do not agree.

In addition to protecting the public safety, Madison Heights has sought to protect the aesthetic well-being of its citizens. The latter is a valid part of the public welfare. The public welfare is a broad and inclusive concept. It includes the aesthetic as well as the monetary. The decision of what is aesthetically best for the community is for the legislature. *Berman v Parker,* 348 US 26; 75 S Ct 98; 99 L Ed 27 (1954).

The modern trend is to recognize that a community's aesthetic well-being can contribute to urban man's psychological and emotional stability. It is true that the question of what is beautiful and pleasing is for each individual to decide. We

---

[1] For an excellent discussion of the judicial problems which aesthetics raises see Leighty, *Aesthetics as a Legal Basis for Environmental Control,* 17 Wayne L Rev 1347 (1971).

should begin to realize, however, that a visually satisfying city can stimulate an identity and pride which is the foundation for social responsibility and citizenship. These are proper concerns of the general welfare. Yellin, *Visual Pollution and Aesthetic Regulation,* 12 The Municipal Attorney 186 (1971). Madison Heights has determined that its citizens' well-being will be served best by preventing the visual pollution which occurs when high-rise signs dot major thoroughfares. It has sought to do this by limiting the height of free-standing signs within its boundaries.

The use of such signs for advertising purposes is often done with little regard for their natural or man-made environment. Their garishness often intrudes on a citizen's visual senses. Property owners do have the right to put their property to profitable use. But, we do not think that the right to advertise a business is such that a businessman may appropriate common airspace and destroy common vistas. Nor do we believe that the right to advertise a business means the right to interfere with the landscape and the views along public thoroughfares.

We agree with the City of Madison Heights that there is a difference between rural and urban areas. What services drivers expect to find at exit ramps in rural and urban areas is a debatable question. There is little question, though, that there is a greater chance of creating a visual blight in an urban setting. If, in fact, the ordinance made provision for businesses which allegedly need high-rise signs to attract expressway traffic, the record indicates that there is a good possibility that a forest of signs would soon exist. Plaintiff, itself, owns several gas stations within Madison Heights in close proximity to I-75. There

is no telling from this record how many other gas companies also operate stations at exits along I-75 within the defendant's boundaries.

We do not mean to hold that a city can prohibit advertising within its boundaries, just as it cannot exclude certain other uses from its borders, *i.e.,* mobile homes or multiple dwellings. However, when aesthetics is a valid consideration in zoning, a municipality may regulate the manner of advertising so that it better blends into the environment which the community seeks to preserve. As long as the restrictions do not amount to a taking of property, it is perfectly proper for Madison Heights to regulate the height of free-standing signs in its effort to protect public safety and the community's general welfare. There has been no showing on this record that gas stations along expressways in urban areas need high-rise sign advertising to turn a profit. If a station in Madison Heights has a hardship, § 10.804(2) of the city's zoning ordinance provides for a variance if the hardship is proven. The ordinance in its total terms is not unreasonable.

The trial judge also held the ordinance unconstitutional as to plaintiff. The basis for this aspect of his opinion was that plaintiff had proven a special need for a high-rise sign to attract traffic from the I-75 Expressway.

Hardship or special need variances are the basic devices for reconciling zoning with individual rights. 8 McQuillin, Municipal Corporations, Zoning § 25.166, pp 535–536. They are granted sparingly and only in situations where there is sufficient evidence to show the property cannot be used consistently with existing zoning. *Farah v Sachs,* 10 Mich App 198 (1968). The hardship, if it exists, must be unique to the land itself. The fact that the

property would be worth more if the variance were granted is not sufficient to sustain a variance. *Puritan-Greenfield Improvement Association v Leo,* 7 Mich App 659 (1967).

In the instant case, plaintiff's basic contention is that if the sign were allowed its business would be over four times as great. One of its witnesses conceded, however, that the station was turning a profit. It is just not the expected profit. The record before us is not sufficient to sustain plaintiff's allegation that without the variance its property is being confiscated and that it cannot operate a profitable station.

There is no evidence in the record supporting the contention that if a sign were allowed, the station would pump 85,000 gallons per month. On the contrary, the record indicates when plaintiff purchased the property it erected a sign, contrary to the Madison Heights ordinance. Prior to the time the sign was taken down, sales at this station never approached the projected figure. Further, the record also indicates that Fourteen Mile Road is a divided highway so that drivers can only enter the station in an easterly direction. This and management could also affect sales.

The plaintiff's argument is bottomed on its inability to obtain expected profits. The test of a zoning ordinance's constitutionality is not profitability. *Van Arsdel v Township of Addison,* 37 Mich App 613 (1972).

Reversed.

McGregor, P. J., concurred.

Targonski, J. *(concurring).* I concur in the opinion for reversal of the trial court on the basis of the authorities and conclusions therein stated as to the question of safety and public welfare. I do

not, however, concur in the portion of the opinion related to aesthetic considerations, especially in light of the fact that the ordinance in question does not provide any yardstick for the measure of such aesthetic considerations. We will all live to rue the day that public officials are permitted to meddle in private affairs on aesthetic considerations since as the majority opinion states each person has his own yardstick for the evaluation of matters aesthetic. We should not open this door which could very well lead to a situation of a most highly regulated society in the world at the whim and caprice of individual officials without any proper measure for a limitation on such individual values rather than values prescribed by law.

Nevertheless we do agree that from a standpoint of safety considerations which are amply provided for in the ordinance we must reverse. We concur in the result.